UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

B&P LITTLEFORD, LLC,

    Plaintiff,

v             Case No. 18-11425
             Honorable Thomas L. Ludington
PRESCOTT MACHINERY, LLC,
and RAY MILLER,

    Defendants.
_____/

## ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT AND GRANTING IN PART MOTION FOR ATTORNEY'S FEES

On May 7, 2018, Plaintiff B&P Littleford, LLC ("B&P") filed a nine-count complaint against Defendants Prescott Machinery, LLC ("Prescott") and Ray Miller. On April 24, 2019, a stipulation was entered that dismissed Counts 2 and 4 through 9 of Plaintiff's Complaint. The stipulation further granted Plaintiff leave to file an Amended Complaint to include only Count 1 (Violation of the Federal Defend Trade Secrets Act) and Count 3 (Violation of the Michigan Uniform Trade Secrets Act) of the initial Complaint. ECF No. 44 at PageID.981.

Defendants filed a motion for summary judgment, arguing that Plaintiff's claims were barred by the statute of limitations. ECF No. 72. The motion was granted and the case dismissed. ECF No. 87.

Plaintiff subsequently filed a Motion to Alter or Amend Judgment. ECF No. 93. That same day, Defendants filed a Motion for Attorney's Fees. ECF No. 94. For the following reasons, Plaintiff's Motion to Alter or Amend Judgment will be denied and Defendants' Motion for Attorney's Fees will be granted.

**I.**

**A.**

According to its Complaint, Plaintiff designs and manufactures "a wide variety of highly engineered mixers, dryers, extruders, compounders, kneaders, reaction vessels, Podbielniak Centrifuges, and centrifugal separation equipment for manufacturing applications." ECF No. 1 at PageID.3. From 1911 to 1987, Plaintiff B&P was incorporated as Baker Perkins, Inc. ECF No. 45 at PageID.984. In 1987, Baker Perkins merged with APV Chemical Machinery and became known as "APV". *Id.* Defendant Miller was APV's General Manager until 1995 when APV sold its chemical division to an entity newly formed by Miller and others, B&P Process Equipment and Services, LLC ("B&P"). *Id.*

Miller was employed at B&P in various capacities, including as a board member and B&P's President and Chief Executive Officer. ECF No. 1 at PageID.4. Miller's employment gave him access to B&P's confidential and trade secret information. *Id.* at PageID.5. In 2008, Miller's employment at B&P ended. *Id.* According to Plaintiff, Miller was terminated "after some questionable activities." ECF No. 78-2 at PageID.2785. More specifically, because he "breached his fiduciary, contractual and other duties to B&P, caused B&P to write checks to a company in which Miller had an interest…, misappropriated opportunities of B&P, and engaged in other wrongful actions and inactions." *Id.* at PageID.2794-2795. As part of his termination, he entered into a confidential settlement and release agreement with Plaintiff in which he represented

> Since July 31, 2008, [Miller] has not had and does not have physical possession of or access to any customer lists, software, records, manuals, equipment, drawings, blue prints, or confidential proprietary information of or about B&P, whether hard copy or electronic. Nor has Miller given any such materials or information to any other person for any purpose other than to advance the business interests of B&P.

ECF No. 1 at PageID.6. Soon after ending his employment with Plaintiff in 2008, Miller started the company Prescott Machinery, LLC where he currently serves as its president. *Id.*

**B.**

A few years after Miller stopped working for Plaintiff, Plaintiff learned that Miller had misappropriated several of Plaintiff's trade secrets. In 2012, Plaintiff's Director of Engineering, Timothy Coughlin, prepared an affidavit in which he compared two drawings from Prescott (Exhibits 1 and 2) with two drawings from B&P (Exhibits 3 and 4). Coughlin testified that:

> Exhibits 1 and 2 were generated from B&P drawings of Exhibits 3 and 4…[I]t is difficult to believe that Exhibits 1 and 2 could have been specified, engineered and detailed without using B&P prints as a source of such information…[M]y reasons are as follows:
>
> - The parts are nearly identical. Where they differ are in seemingly unimportant details that would generally be overlooked during modeling;
>
> - That the location of most dimensions and notes are nearly identical;
>
> - That the wording of individual notes is nearly identical;
>
> - That tolerances are identical;
>
> - That there is generally no technique to reverse-engineer tolerances;
>
> - That surface finishes are identical;
>
> - That the material call-out and coating call-out are very specific and used for only one process;
>
> - That the material call-outs are identical to the B&P material call-outs;
>
> …[T]he similarities in these exhibits clearly indicate that B&P digital information was utilized by Prescott Machine, to produce the drawings provided to B&P's vendor, who subsequently provided such drawings to B&P;
>
> That I have been advised that Ray Miller is a principal of Prescott;
>
> That I am advised that Ray Miller was previously CEO of B&P and had access to B&P's confidential information, including access to digital data from which B&P drawings could be reproduced.

ECF No. 78-2 at PageID.2837-2838.

Plaintiff consulted with the FBI on several occasions in 2013, 2014, and 2015 regarding Plaintiff's suspicions of Miller's misappropriation of trade secrets. ECF No. 84 at PageID.3271. It

provided a list of at least eight incidents of misappropriation since 2012 in a complaint that it later

filed with the FBI. It provided:

1. In 2012 Ray Miller requested a quote from a B & P Vendor for a funnel support…This occurred again with Metaltek in 2014.

2. In 2013 Ray Miller and Robin Aurs rebuilt a B & P machine for Dow. They indicated that they could provide spare parts and bring the machine to OEM specifications. This could not be done without B & P drawings.

3. In 2013 there was evidence that Cygnys had drawings from Prescott Machinery. These drawings were not shared with B & P because the President of Cygnys indicated that he had a non-disclosure agreement with Prescott.

4. In November of 2013, Robin Aurs of Prescott Machine contacted a customer indicating that he could repair B & P gear boxes. This particular customer has had gear boxes from B & P. Mr. Aurs also indicated that Ray Miller was also at Prescott Machinery.

5. In April, 2015, Cygnys again came into play. The president of Cygnys indicated that he had drawings from Prescott (Ray Miller) of a barrel liner, a wear part, from the discharge end of a B & P extruder. While we do not have the drawings, knowledgeable people indicated that it would be impossible to duplicate the dimensions and tolerances without the B & P electronic files.

6. In November, 2014, Metaltek provided drawings for an inlet funnel for an S-32 pusher centrifuge, Metaltek being a supplier to B & P refused to provide the part but also refused to identify his customer although it is believed to be Ray Miller. The drawings are almost identical to B & P drawings.

7. In May of 2015, Prescott began to offer on its web page a vertical mixer. B & P's vertical mixer is a major product for B & P. The B & P vertical mixers are used to produce energetic material such as solid rocket fuel. The mixers are licensed by the U.S. Commerce Department with approval of the State Department due to the nuclear nonproliferation concerns…

9. Robin Aurs allegedly sold B & P replacement parts in China. Robin Aurs approached a B & P customer in Norway and stated the he is working with Ray Miller. He claimed to be able to do rebuild work and supply parts meeting OEM specifications.

ECF No. 78-2 at PageID.2793.

## C.

Plaintiff filed at least two separate complaints with the FBI claiming that Miller had misappropriated trade secrets. Plaintiff filed the first complaint in 2015 and the second in 2018.

### 1.

On July 15, 2015, Plaintiff submitted a formal complaint to the FBI ("2015 FBI Complaint"). It consisted of a cover letter written by Plaintiff's attorney John B. Hardaway to Special Agent Anthony Kraudelt as well as accompanying documents supporting Plaintiff's claim. ECF No. 78-2. Plaintiff listed Miller as "Suspect #1", alleging that Miller possessed "the entire electronic files of B & P's technical drawings" and was using them "to produce products for sale in Norway, China[,] Bulgaria, [and] South Korea." *Id.* at PageID.2791, 2853. Plaintiff represented that it possessed proof of these sales in "e-mail communications and potential testimony." *Id.* Plaintiff also stated that Robert Auers, a "past field service technician", worked for Miller and was "believed to have some access to B&P drawings and probably through Mr. Miller the *entire* electronic file." *Id.* at PageID.2785 (emphasis added). Plaintiff made a similar assertion regarding another former B&P employee who potentially possessed "the *entire* B&P electronic document file." *Id.* at PageID.2786 (emphasis added).

In the FBI complaint, Plaintiff stated that it became aware of the misappropriations when "[t]he information began appearing in 2012." *Id.* at PageID.2791. It also represented that the "[e]stimated time period of illegal distribution" exceeded four years. *Id.* at PageID.2845. The FBI complaint is dated July 15, 2015. Accordingly, Plaintiff estimated that the date of illegal distribution to have occurred as early as July 2011.

### 2.

The FBI declined to pursue an investigation into the allegations of Plaintiff's 2015 complaint. In 2018, Plaintiff again filed a complaint with the FBI about the alleged trade secret misappropriation ("2018 FBI Complaint"). The complaint provided

3/22/18

To Whom it may concern:

B&P Littleford, LLC Purchasing makes continuous strides to protect patented/proprietary to B&P Littleford, LLC designs and products. During these efforts it has come to our attention that certain drawings have been shared with vendors without prior approval from a manufacturer outside of B&P.

For example, it was discovered that a High Speed Vertical Mixing Blade (P /N 000289281) was presented from an outside manufacturer to a vendor of B&P for quote and an order was placed to manufacture. The drawing dimensions are identical to a B&P drawing, which would only be known by B&P, but with subtle changes to the drawing layout and title block/company name changes.

There were also other B&P products duplicating the same scenario with additional B&P vendors. Evidence of this has been submitted in previous documentation.

ECF No. 78.

However, the FBI again declined to pursue criminal prosecution. Accordingly, Plaintiff filed a civil complaint against Prescott and Miller on May 7, 2018.

### D.

Plaintiff's original civil complaint alleged that Defendant had misappropriated the trade secrets to a 16 PVM Planetary Vertical Mixer ("Mixer"). The Mixer had been installed in the 1960s at the United States Navy's Surface Weapons Center at China Lake, California. *Id.* Plaintiff developed the Mixer in order to "provide a high speed mixer with close tolerances to improve over other mixers in the marketplace." *Id.* at PageID.7. On July 25, 2017, the Navy issued a Request for Proposal to "retrofit and overhaul the Mixer." *Id.* That same day, Prescott submitted a response to the Request for Proposal. On February 8, 2018, the Navy awarded the contract ("China Lake contract") to Prescott. A B&P vendor subsequently received copies of Prescott's drawings because

the vendor was asked to supply parts for the China Lake contract.[1] *Id.* The vendor provided these

drawings to Plaintiff. *Id.* Plaintiff alleges that "[a] review of Prescott's drawings and schematics

received from the vendor shows that B&P's confidential and trade secret technical drawings were

used in Prescott's attempt to source parts for the Navy's contract." *Id.* at PageID.8.

**E.**

On October 8, 2018, Defendants filed a Motion for Protective Order and Related Relief

largely objecting to the scope of Plaintiff's discovery requests. Defendants contended that Plaintiff

was seeking discovery related to alleged trade secret misappropriations unrelated to the Mixer,

characterizing the requests as a "fishing expedition." ECF No. 17 at PageID.175. On October 16,

2018, Plaintiff responded with a motion to compel. ECF No. 21. The motions were referred to

Magistrate Judge Morris who held a hearing on November 20, 2018. ECF No. 31. She granted the

motions in part and denied them in part. During the hearing, she explained that the scope of

discovery should be governed in substantial part by the scope of the Plaintiff's factual allegations

in the complaint, specifically those drawings and trade secret information related to the project at

issue in Plaintiff's complaint, the Mixer and the China Lake contract. During the hearing, Judge

Morris held:

> It's the single project and it's five drawings. I think that the scope of discovery
> should allow the plaintiff to seek information about both those things in the sense
> that plaintiff should not be limited to the five drawings, but rather any drawings or
> other information that was misappropriated by Miller to Prescott and how that
> happened, or how Prescott got it, whether it was through Miller or someone else,
> relating only to this project.

ECF No. 32 at PageID.650-651. Accordingly, the scope of discovery was limited to discovery

related to the Mixer and the China Lake contract. The close of discovery was originally scheduled

to occur on January 11, 2019. ECF No. 14. However, on January 18, 2019, the parties stipulated

---

[1] Plaintiff's amended complaint does not specify the date the third-party vendor received copies of these drawings.

to extend the discovery deadline to April 22, 2019. ECF No. 35. On April 11, 2019, the parties again stipulated to extend the discovery deadline, setting it for May 13, 2019. ECF No. 42.

On February 18, 2019, Defendants filed a motion for judgment on the pleadings, claiming that most of Plaintiff's claims were time-barred. ECF No. 39. On April 5, 2019, Plaintiff filed a motion to amend its complaint. ECF No. 41. On April 25, 2019, a stipulated order was entered dismissing Counts 2 and 4-9 of Plaintiff's complaint and permitting Plaintiff to amend its complaint. ECF No. 44. Plaintiff's amended complaint added allegations of misappropriation by Defendants in addition to those presented in its initial complaint regarding the Mixer. The amended complaint provides

> Defendants have misappropriated additional documents, drawings, and other confidential, proprietary, and trade secret information wholly unrelated to the Mixer or the Navy's RFP, but that belongs to B&P and is being used by Miller and/or Prescott to B&P's detriment and damage.

ECF No. 45 at PageID.995.

Two weeks after filing its amended complaint and five days before the close of discovery, Plaintiff filed a motion to compel, seeking answers to seven interrogatories and five production requests that Plaintiff had requested seven months prior in November 2018. ECF No. 47. Since initially requesting this material from Defendants in November, Plaintiff alleged that it had "been unable to obtain any discovery from Defendants outside of documents and drawings related to China Lake and the Mixer." ECF No. 69 at PageID.1802. The motion was referred to Judge Morris who held a hearing on June 4, 2019. ECF No. 51. She denied Plaintiff's motion to compel and held that:

> Plaintiff's Motion to Compel (R. 47) is DENIED as untimely. Plaintiff's Amended Complaint may have expanded the scope of discovery but it did not automatically trigger a need to supplement all previous discovery requests.

ECF No. 68 at PageID.1792.

A month and a half after the close of discovery, Plaintiff filed a motion to reopen discovery. ECF No. 69. Plaintiff sought to obtain responses to the seven interrogatories and five production requests that it had previously sought. *Id.* at PageID.1795. Plaintiff alleged that these are "**identical** to 7 Interrogatories and 5 Production Requests found in Plaintiff's first discovery requests served on Defendants in November **and identical** to the 7 Interrogatories and 5 Production Requests for which Plaintiff sought 'initial and/or supplemental production' from Defendants on April 26, 2019." *Id.* at PageID.1795-1796 (emphasis in original). The motion was denied because Plaintiff had been aware of the information since the beginning of discovery and did not seek to amend its complaint until the discovery period had nearly expired. ECF No. 86.

## F.

On July 1, 2019, Defendants filed a Motion for Summary Judgment, arguing that Plaintiff's claims were barred by the statute of limitations. ECF No. 72. The Court determined that Plaintiff had been aware of the alleged misappropriation of trade secrets in 2012 and that it filed its claims after the statute of limitations had expired. Defendant's Motion for Summary Judgment was granted and the case dismissed. ECF No. 87.

## II.

Plaintiff has now filed a Motion to Alter or Amend the Judgment pursuant to Fed. R. Civ. P. 59(e) and Eastern District of Michigan Local Rule 7.1(h). ECF No. 93. To prevail on a Rule 59(e) motion, the moving party must demonstrate "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009). Under Local Rule 7.1(h), the moving party must show: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept.*

*of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997)). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3); *see also Bowens v. Terris*, No. 2:15-CV-10203, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

### III.

Plaintiff contends that "As a result of the procedural history of this case, the misappropriation claims concern only 27 specific drawings associated with the China Lake project." ECF No. 93 at PageID.3378. Plaintiff argues that the "case is circumscribed in this way because ***Defendants*** successfully moved to bar B&P from conducting discovery about any other, prior acts of misappropriation." *Id.* (emphasis in original).

Discovery was limited to the China Lake project because of deficiencies in Plaintiff's litigation decisions. Plaintiff presented a narrow claim in its initial complaint that it then sought to expand with discovery motions and an untimely motion to amend its complaint. As previously explained in the Court's order denying Plaintiff's Motion to Re-Open Discovery:

> Plaintiff filed its complaint over a year ago. The parties were provided extensive time to conduct discovery and the discovery period was extended on two separate occasions. Plaintiff has known of this discovery issue for months. It acknowledges that it seeks the same interrogatories and production requests that it served almost a year ago. ECF No. 69 PageID.1809.

> Plaintiff contends that it has not been dilatory in seeking this discovery material because it "attempted to obtain discovery on these **identical** issues in its **very first** discovery requests, served on September 26, 2018. But, time and again, Defendants stymied Plaintiff's efforts." ECF No. 69 at PageID.1809 (emphasis in original). It is not surprising that Defendants "stymied" Plaintiff's efforts at that point in the litigation because Plaintiff had not yet amended its complaint. Defendants were

under no obligation to provide this additional discovery since it was beyond the scope of the issue framed by the initial complaint. As explained by Judge Morris at the November hearing, the scope of discovery was limited to the China Lake contract and the Mixer. Plaintiff amended its complaint at the end of the discovery period and on the eve of the dispositive motion deadline. Accordingly, Defendants cannot be faulted for refusing to give discovery material that fell outside of the ambit of the complaint.

ECF No. 86 at PageID.3321.

Plaintiff is again attributing the deficiencies of its own litigation on Defendants by claiming that Defendants did not furnish certain discovery materials. The Court has ruled multiple times that Defendants were not required to furnish these materials. This well-used argument by Plaintiff is again rejected.

Plaintiff further argues that the Court erred by determining that there was "only one act of misappropriation and consequently only one accrual date." ECF No. 93 at PageID.3378. It contends that the Court should have required Defendants to prove that "the China Lake Drawings are either the **same** trade secrets, or are closely **related**, to the trade secrets B&P suspected were originally misappropriated." *Id.* at PageID.3379 (emphasis in original).

Defendants furnished evidence that the China Lake drawings were part of the trade secrets that were originally misappropriated. The Court's opinion provided:

Plaintiff's 2015 complaint to the FBI demonstrates that Plaintiff was aware of the misappropriation as early as 2012. Regarding the China Lake project, Plaintiff attempts to characterize its discovery of the misappropriation to have occurred in 2018. However, Plaintiff's 2015 letter to the FBI states that Miller possessed "the entire electronic files of B & P's technical drawings" since 2012. ECF No. 78-2 at PageID.2791. The drawings for the China Lake project were presumably among those taken by Miller since according to Plaintiff, the Mixer was installed in the 1960s and would therefore be present in the "entire electronic files of B&P."

ECF No. 87 at PageID.3339-3340.

The Court then quoted from Plaintiff's response brief that supported a finding that Plaintiff had been aware of the alleged misappropriation long before it filed its current complaint.

> [I]n its own brief, Plaintiff states that it "heard between 2012 and 2013, [that] Defendants had requested a quote for a funnel support, rebuilt a B&P machine, and offered to repair B&P gear boxes." ECF No. 83 at PageID.3195. Plaintiff declared that "[t]his rumor troubled B&P, but it was disinclined to reignite caustic and costly litigation with Miller." *Id.* Plaintiff further states that it was "increasingly concerned upon learning from two vendors in 2014 and 2015 that Defendants may have possessed B&P's trade secrets."

*Id.* at PageID.3340. Furthermore, Plaintiff represented that two former B&P employees, at least one of whom worked for Miller, were "believed to have some access to B&P drawings and probably through Mr. Miller the *entire* electronic file." ECF No. 78-2 at PageID.2785-86 (emphasis added).

Plaintiff was aware of the possible misappropriation of the China Lake materials for years prior to filing its current complaint. Its 2015 FBI Complaint as well as its representations in its own brief support such a finding.

Plaintiff argues that the evidence the Court relied on to support its finding that Plaintiff had been aware of the misappropriation as early as 2012 "show[ed] little more than that Defendants were competing with B&P. They do not show that Defendants had B&P's trade-secret materials or, even if they had them, that the materials were acquired improperly." ECF No. 93 at PageID.3381. Plaintiff does not address the legal authority cited by the Court supporting the notion that adequate suspicion of a misappropriation triggers the statute of limitations. *See Adcor Industries, Inc. v. Bevcorp, LLC*, 252 Fed.Appx. 55, 60 (6th Cir. 2007) (finding that the plaintiffs "*did* have reasons to suspect, they *did not* investigate those suspicions, and they affirmatively *forwent*—for economic reasons—bringing a claim) (emphasis in original).

In its Motion to Alter or Amend the Judgment, Plaintiff quotes the court in *Adcor Industries, Inc.* as holding that "mere knowledge that a company is competing in the marketplace and manufacturing similar parts is not dispositive on the accrual of the statute of limitations in a

trade secret misappropriation case." *Adcor Industries, Inc.* 411 F. Supp. 2d at 791. However, Plaintiff neglected to furnish the context from which it provided the quotation. A closer look at the opinion reveals that Plaintiff's quotation was an argument that the court rejected based on the facts of the case. The opinion provides:

> [Plaintiff] Adcor also contends that "mere knowledge that a company is competing in the marketplace and manufacturing similar parts is not dispositive on the accrual of the statute of limitations in a trade secret misappropriation case." While this proposition may be true, it does not fit the facts of this case.

*Id.* The court went on to distinguish the facts of the case before it by finding that the plaintiff had adequate notice of an alleged misappropriation. So too here. By its own admissions, Plaintiff had more than a mere suspicion that Defendants were competing against it in the marketplace.

Furthermore, Plaintiff's argument that Plaintiff was unaware whether the trade secrets had been misappropriated are unavailing. Plaintiff's 2015 FBI Complaint demonstrates that it had multiple documents indicating that Defendant had likely misappropriated Plaintiff's trade secrets. Additionally, Timothy Coughlin's 2012 affidavit provides that he compared B&P drawings with Prescott drawings and determined that the Prescott drawings could not have been "specified, engineered and detailed without using B&P prints as a source of such information." ECF No. 78-2 at PageID.2837-2838. Plaintiff cannot succeed on its claim that it was unaware of these misappropriations by turning a blind eye to those facts that were before it at the time the statute of limitations began to run.

Plaintiff attempts to salvage its claim by arguing that Miller testified that "at least some of the China Lake Drawings were provided to him…sometime in 2017 or 2018." ECF No. 93 at PageID.3380. This does not eliminate the fact that Plaintiff was aware of the alleged misappropriation of the "the entire electronic files of B & P's technical drawings" as early as 2012, but elected not to bring its claim within the statute of limitations. ECF No. 78-2 at PageID.2791.

Plaintiff's Motion to Alter or Amend the Judgment will be denied.

## IV.

Defendants have filed a "Motion for Attorneys' Fees, Non-Taxable Expenses, and/or Sanctions Against Plaintiff and its Counsel." ECF No. 94. Defendants' motion centers on Plaintiff's alleged delay in disclosing its 2015 FBI Complaint. Defendants contend that Plaintiff withheld disclosure of this document until almost a year after filing its claim and when discovery was slated to soon close. A review of the parties' discovery disclosures supports Defendants' motion for attorney's fees.

## A.

Plaintiff filed its complaint on May 7, 2018. ECF No. 1. Almost three months later, Plaintiff served its initial disclosures as required by Rule 26(a)(1). However, it did not produce any documents. Rather, Plaintiff stated, "B&P is in possession of various documents and records related to Defendants which may be used to support B&P's claims. B&P will produce such records in response to any applicable discovery requested received from Defendants." ECF No. 94-4 at PageID.3429.

On September 26, 2018, Defendants served their first set of discovery requests, which included:

- All communications relating to any claims and/or defenses at-issue in this case.

- All non-privileged documents related to Plaintiffs decision to commence or pursue the claims at-issue in this case and/or Plaintiffs decision to commence or pursue claims related to the protection of its trade secrets, or confidential or proprietary information.

- All documents reflecting or related to when and how Plaintiff first became aware of the claims asserted in its Complaint.

ECF No. 94-5 at PageID.3444. Plaintiff responded to Defendants' discovery request in October 2018. However, it did not include the 2015 FBI Complaint.

Plaintiff furnished supplemental discovery on January 28, 2019. ECF No. 94-6. This included the 2018 complaint that Plaintiff had filed with the FBI. Again, Plaintiff did not disclose its 2015 FBI Complaint. Additionally, Plaintiff did not disclose communications related to the 2018 FBI Complaint that would have placed Defendants on notice of the 2015 FBI Complaint's existence. One communication in particular begins with an email from Mr. Slovin inquiring with the FBI regarding the status of the 2018 FBI Complaint. The FBI agent's response provided, "I met with the Chief United States Attorney this past Monday, we went over your concerns and he was provided all of the materials from both *your past 2015* and present complaints." ECF No. 78-18 at WW (emphasis added). Though associated with the 2018 FBI Complaint, Plaintiff elected not to provide Defendants with this email and delayed Defendants learning of the existence of the 2015 FBI Complaint.

On February 18, 2019, Defendants filed a motion for judgment on the pleadings, claiming that most of Plaintiff's claims were time-barred. Almost three weeks later, Plaintiff again supplemented its discovery disclosures to Defendants. Again, Plaintiff did not produce the 2015 FBI Complaint. The next month, Plaintiff filed a motion to amend its complaint. Almost three weeks later, the parties entered into a stipulation. The stipulation dismissed all counts of Plaintiff's complaint except for two. It further permitted Plaintiff to file an amended complaint. Defendants were still unaware of the existence of the 2015 FBI Complaint.

On April 17, 2019, one of Plaintiff's employees, Ryan Luft, was deposed. Ryan Luft was one of the signatories of the 2018 FBI Complaint. During his deposition, Defendants asked him about a sentence in the 2018 FBI Complaint that provided "There were also other B&P products duplicating the same scenario with additional B&P vendors. *Evidence of this has been submitted in previous documentation.*" ECF No. 78 (emphasis added). Luft's deposition provides:

Q. Okay. And then you conclude by stating "Evidence of this has been submitted in previous documentation." Do you see that?

A. Yes.

Q. What are you referring to?

A. Prior to it's my understanding prior to me coming to the company there had been other documents or other evidence submitted or other evidence, or other documents, let's call them, that have been brought to B&P's attention before.

Q. Okay. Other documents that B&P believed showed that its drawings had been shared with vendors without prior approval from a manufacturer outside of B&P, right?

A. Yes.

Q. And when you're referencing the manufacturer outside of B&P in this letter, are you referring to Prescott Machine?

A. Yes.

Q. Any other manufacturers?

A. None to my knowledge.

Q. So you had an understanding that prior to this letter and the information that you received from Bradken and Mr. Sulzer, the company that's B&P was aware that Prescott Machine had shared other drawings, other B&P drawings with vendors without prior approval; is that right?

A. Yes.

ECF No. 72-7 at 107-108.

That same day, the other signatory on the 2018 FBI Complaint was deposed, Steven Burk.

His deposition provides:

Q. Turn back to 79, Exhibit 79. Do you see the last sentence, where it says "Evidence of this has been submitted in previous documentation"?

A. Yes.

Q. What are you referring to there?

A. I don't know what exact scenario that is, but there must have been other evidence that I found that showed the same type of activity happening.

Q. And that activity would have been reflected in a letter similar to the one that's included within Exhibit 79; is that right?

A. I don't recall ever writing another letter besides this one.

Q. Was there a memo of some sort that you prepared?

A. Not that I recall.

Q. Well, it does say "previous documentation," correct?

A. True, and maybe I had sent something to Larry prior to this. I mean, I don't recall without seeing an exact document. I couldn't tell you what that was or what all is encompassed in that.

ECF No. 72-9 at 37-38.

The last party-deponent in the case was Laurence Slovin, B&P's CEO since 2008. ECF No. 72-8. His deposition was scheduled for May 7, 2019. The afternoon before, Plaintiff produced the 2015 FBI Complaint. It was attached to an email that provided "attached are additional documents which were inadvertently not produced earlier." ECF No. 72-13. As explained above, Plaintiff alleged in the 2015 FBI Complaint that Miller possessed "the entire electronic files of B & P's technical drawings" and was using them "to produce products for sale in Norway, China[,] Bulgaria, [and] South Korea." ECF No. 78-2 at PageID.2791, 2853. It represented that it became aware of the misappropriations when "[t]he information began appearing in 2012." *Id.* at PageID.2791.

A few days after receiving the 2015 FBI Complaint, Defendants filed a motion to compel any discovery material related to Plaintiff's investigations of Defendants' alleged misappropriation. ECF No. 49. The motion was granted. ECF No. 68.

**B.**

Defendants seek attorney's fees from Plaintiff under the federal Defend Trade Secrets Act and Michigan Uniform Trade Secrets Act. Additionally, they ask the Court to sanction Plaintiff's Attorney John B. Hardaway and to hold him individually liable for Defendants' attorney's fees.

## 1.

"Generally, fee shifting is prohibited under the 'American Rule,' which is 'deeply rooted in our history and in congressional policy.' Congress, however, 'while fully recognizing and accepting the general rule,' has made 'specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.'" *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010); quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, (1975).

The federal Defend Trade Secrets Act furnishes "specific and explicit provision for the allowance of attorneys' fees." It provides:

> In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may… if a claim of the misappropriation is made in bad faith,…award reasonable attorney's fees to the prevailing party.

18 U.S.C. § 1836(b)(3).

The Sixth Circuit has held that to recover attorney's fees under "bad faith" requirement of the federal Defend Trade Secrets Act, "a district court must find [1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308 (6th Cir. 1997). "Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of

conduct that will support a finding of bad faith or improper purpose." *BDT Prod., Inc.*, 602 F.3d at 754.

Similarly, the Michigan Uniform Trade Secrets Act provides, "If a claim of misappropriation is made in bad faith…the court may award reasonable attorney's fees to the prevailing party." Mich. Compl. Law 445.1905. The Sixth Circuit has held that a finding of bad faith "requires objective speciousness of the plaintiff's claim…and…subjective bad faith in bringing or maintaining the claim." *Degussa Admixtures, Inc. v. Burnett*, 277 Fed App'x. 530, 534 (6th Cir. 2008) (citations omitted).

Defendants seek attorney's fees from Plaintiff B&P Littleford LLC under both statutes.

**2.**

Additionally, Defendants seek attorney's fees from Plaintiff's attorney John Hardaway pursuant to 28 U.S.C. §1927. It provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Sixth Circuit has held that sanctions under 28 U.S.C. §1927 are justified "when an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1050 (6th Cir. 1996). Furthermore, "[a]n attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits…Accordingly…when an attorney knows *or reasonably should know* that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of

nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *Wilson-Simmons v. Lake Cty. Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir. 2000) (emphasis in original).

28 U.S.C. § 1927 does not hold a party liable, but instead "subjects attorneys to personal liability for unreasonably and vexatiously 'multipl[ying] the proceedings in any case.'" *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *see also BDT Prod., Inc.*, 602 F.3d at 750 (6th Cir. 2010) ("Section 1927 does not authorize the imposition of sanctions on a represented party, nor does it authorize the imposition of sanctions on a law firm.") (quoting *Rentz v. Dynasty Apparel Indus., Inc.,* 556 F.3d 389, 396 n. 6 (6th Cir.2009)). It "is intended to require attorneys to satisfy personally the excess costs attributable to their misconduct." *Piljan v. Michigan Dep't of Soc. Servs.*, 585 F. Supp. 1579, 1583 (E.D. Mich. 1984) (emphasis added).

Defendants ask the Court to sanction Attorney John Hardaway and "hold him individually liable to Defendants for their attorneys' fees and untaxed costs incurred in defending the claims." ECF No. 94 at PageID.3412.

## C.

Plaintiff's initial disclosures were deficient pursuant to Rule 26(a)(1), which provides in part:

> [A] party must, without awaiting a discovery request, provide to the other parties…a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment

Rather than furnishing Defendants with "documents, electronically stored information, [or] tangible things," Plaintiff simply responded, "B&P is in possession of various documents and

records related to Defendants which may be used to support B&P's claims. B&P will produce such records in response to any applicable discovery requests received from Defendants." ECF No. 94-4 at PageID.3429.

Plaintiff's actions robbed Rule 26(a)(1) of its intended purpose, namely to require parties to furnish discovery material "without awaiting a discovery request." The commentary for Rule 26(a)(1) provides "As the functional equivalent of court-ordered interrogatories, this paragraph requires early disclosure, without need for any request." Fed. R. Civ. P. 26 Advisory Committee Notes (1993). Plaintiff disregarded this directive by requiring Defendants to first request such materials.

Plaintiff's evasive tactics continued by not disclosing the 2015 FBI Complaint until a year after filing its complaint. By the time Plaintiff had produced the 2015 FBI Complaint, Plaintiff had submitted its initial disclosures, produced at least two sets of supplemental discovery, and entered into a stipulation with Defendants. All the depositions but one had been completed, with Plaintiff not producing the 2015 FBI Complaint until the afternoon before the final deposition was to occur. In their motion, Defendants contend that

> Earlier depositions raised unanswered questions about vague statements in the 2018 Complaint. Defendants believe that B&P and Hardaway only produced the 2015 Complaint *at all* because they realized Defendant would further explore these issues with Slovin, who would then be forced to admit to the existence of the 2015 Complaint.

ECF No. 94 at n. 9 (emphasis in original).

Plaintiff argues that its failure to disclose the 2015 FBI Complaint was not intentional because it did not consider the 2015 FBI Complaint to be within the scope of discovery. Plaintiff's initial complaint only alleged misappropriation of the China Lake drawings that it allegedly first learned of in 2018. Plaintiff claims that it did not disclose the 2015 FBI Complaint because the

2015 complaint predated Plaintiff learning of the misappropriation of the China Lake drawings. Plaintiff contends that its amended complaint filed on April 25, 2019 expanded the scope of discovery and accordingly, it produced the 2015 FBI Complaint a couple weeks later.

This argument is untenable. By 2015, Plaintiff had compiled a large body of evidence supporting its suspicions that Defendant had misappropriated its entire cache of electronic drawings. Plaintiff has not furnished any evidence or argument demonstrating that the China Lake drawings were not included in this cache. Accordingly, the 2015 FBI Complaint is relevant to the China Lake Project and fell within the scope of discovery of Plaintiff's initial complaint. In their discovery requests, Defendants specifically requested:

- All communications relating to any claims and/or defenses at-issue in this case.

- All non-privileged documents related to Plaintiffs decision to commence or pursue the claims at-issue in this case and/or Plaintiffs decision to commence or pursue claims related to the protection of its trade secrets, or confidential or proprietary information.

- All documents reflecting or related to when and how Plaintiff first became aware of the claims asserted in its Complaint.

ECF No. 94-5 at PageID.3444. The 2015 FBI Complaint falls squarely within this discovery request because it speaks directly to "when and how Plaintiff first became aware of the claims asserted in its Complaint."

Furthermore, Plaintiff's response to Defendants' motion for attorneys' fees provides:

The DTSA and the MUTSA incorporate the "discovery rule" into their statutes of limitations under which a cause of action does not accrue until such time as the plaintiff discovers, or by reasonable diligence should have discovered, the defendant's wrongful conduct <u>and</u> the plaintiff's resulting injury.

ECF No. 97 at PageID.3626 (emphasis in original). Plaintiff's argument cuts against its own claim. As explained multiple times by the Court, Plaintiff had a wealth of evidence in 2015 indicating that Defendants had been allegedly misappropriating its trade secrets for years. This at least rose

to a level misappropriation that Plaintiff "by reasonable diligence should have discovered." Instead, Plaintiff chose to sleep on its rights and then bring a stale claim against Defendants.

It is well-established that "the Plaintiff is the master of the complaint." *Caterpillar Inc. v. Williams¸* 482 U.S. 386, 389-99 (1987). The purpose of the complaint is to frame the issues as to subject matter, but also as to the time of the events known to the plaintiff. Plaintiff knew that its claims were time-barred and meritless when it filed its complaint. Plaintiff was aware of Defendants' alleged trade secret misappropriations as early as 2012, but waited six years to bring its complaint. This is not a case of a plaintiff being unaware of an event because it was solely known by a defendant. Instead, it is exactly to the contrary.

Furthermore, Plaintiff's long delay in producing the 2015 FBI Complaint amounts to more than a mere oversight on its part. The document contained multiple admissions by Plaintiff demonstrating that it had known for years of Defendants' alleged misappropriations. Omission of such a critical document amounts to more than inadvertence.

Defendants' motion for attorney's fees against Plaintiff will be granted. Additionally, Attorney John Hardaway will be sanctioned pursuant to 28 U.S.C. §1927. He has represented B&P for nine years and was involved with Plaintiff's investigations into Defendants' alleged misappropriations. ECF No. 97-2 at PageID.3648. His signature appears at the bottom of the cover letter of the 2015 FBI Complaint, demonstrating that throughout the course of this litigation he was aware of the complaint's existence. More importantly, he was aware that Plaintiff's claims were time-barred when he prepared both Plaintiff's initial complaint and amended complaint in this present lawsuit.

Both Plaintiff and Attorney Hardaway will be liable to pay Defendants' attorney's fees and costs. Plaintiff pursued the claim and was advised throughout litigation by Attorney Hardaway. Accordingly, each will be held responsible for Defendants' attorney's fees and costs.

### D.

Defendants seek attorney's fees in the amount of $287,145.80, non-taxable costs equaling $2,482.18, and post-Judgment interest from September 30, 2019. ECF No. 94 at PageID.3417.

### 1.

The lodestar method is used to determine reasonable attorney's fees, which is "the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). This is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Id.*, (quoting *Reed v. Rhodes*, 179 F.3d 453, 471-72 n. 3). "A useful guideline in determining a reasonable hourly rate is the 'prevailing market rate [] in the relevant community." *Dowling v. Litton Loan Servicing LP*, 2009 WL 961124 at *3 (6th Cir. Apr. 9, 2009).

Plaintiff contends that Defendants' attorney's fees are excessive because

> Defendants' attorneys incorrectly justify their rates by reference to the figures for the Detroit area in the State Bar of Michigan Economics of Law Practice 2017 report. This case was litigated in the Northern Division, which is therefore the appropriate geographic touchstone for reasonableness.

ECF No. 97 at PageID.3641. However, Plaintiff does not provide any legal authority to support this assertion. To the contrary, the legal authority furnished by Defendants indicate that the relevant community is not limited to the particular county where the Court sits, but instead can incorporate the entire district where it sits. *See Shaw v. AT&T Umbrella Benefit Plan No. 1*, 2015 WL 8177654, at \*5 (E.D. Mich. Dec. 8, 2015) ("The 'relevant community' here is the Eastern District of Michigan."); *Mohn v. Geoffrey Goll, Esq.*, 2016 WL 1258578, at \*2 (N.D. Ohio Mar. 31, 2016) ("The Court concludes the 'relevant community' in the case at bar is not only Youngstown but the entire Northern District of Ohio.").

Defendants' rates for attorney's fees are reasonable. Furthermore, Plaintiff does not challenge Defendants' reported hours of labor. Accordingly, Defendants' calculations of attorney's fees are accepted.

## 2.

Defendants also seek post-Judgment interest from Plaintiffs. 28 U.S.C. § 1961 provides, "Interest shall be allowed on any money judgment in a civil case recovered in a district court." Defendants seek post-Judgment interest that has accrued beginning September 30, 2019, the date that the Court granted Defendants' motion for summary judgment and dismissed Plaintiffs' claims.

However, this is inconsistent with the legal authority cited by Defendants, *Associated Gen. Contractors of Ohio, Inc. v. Drabik*. The opinion provides that "the language of § 1961(a) permits the interest to run on an [*sic*] fee award from the time of entry of the judgment which *unconditionally* entitles the prevailing party to reasonable attorney fees." *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 495 (6th Cir. 2001) (emphasis added).

The Court's opinion and order on September 30, 2019 granted Defendants' motion for summary judgment, but it did not find that Defendants were entitled to attorney fees. It was not

until Defendants brought their motion for attorney's fees and furnished additional evidence that the Court was able to determine whether Defendants were entitled to such relief. Now that the Court has definitively determined that Defendants may be compensated for their attorney's fees, Defendants are entitled to post-Judgment interest that begins to accrue the date this order is entered.

**V.**

Accordingly, it is **ORDERED** that Plaintiff's Motion to Alter or Amend the Judgment, ECF No. 93, is **DENIED**.

It is further **ORDERED** that Defendants' Motion for Attorney's Fees, ECF No. 94, is **GRANTED in part**.

It is further **ORDERED** that B&P Littleford, LLC and Attorney John Hardaway are responsible to pay Defendants **$287,145.80** for Defendants' attorney's fees and **$2,482.18** for Defendants' non-taxable costs. Plaintiffs are also required to pay Defendants post-Judgment interest as provided in 28 U.S.C. § 1961 that begins to accrue the date this order is entered.

Dated: April 13, 2020
                                  s/Thomas L. Ludington
                                  THOMAS L. LUDINGTON
                                  United States District Judge